UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KELTON SPANN, ET AL.                                    CIVIL ACTION

VERSUS                                                       NO. 21-1643

JPMORGAN CHASE BANK, N.A., ET              SECTION "R" (5)
AL.

## ORDER AND REASONS

Before the Court is defendant JPMorgan Chase Bank, N.A.'s ("Chase")
motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil
Procedure.[1]   Also before the Court is defendant Angie Boudreaux's motion
to dismiss under Rule 12(b)(5), or in the alternative, Rule 12(b)(6).[2]
Plaintiffs Kelton Spann and Evie Fields oppose both motions.[3]   For the
following reasons, the Court grants defendants' motions to dismiss.

---

[1]   R. Doc. 15.
[2]   R. Doc. 16.
[3]   R. Docs. 26 & 36.  Chase asserts that only Mr. Spann has opposed its
motion to dismiss, and that Ms. Fields has not responded to the motion
or moved to amend her complaint.  R. Doc. 34 at 1 n.1.  In plaintiffs'
amended opposition, they assert that both of their oppositions have
been filed "jointly" on behalf of both plaintiffs, and thus that Ms. Fields
has opposed Chase's motion.  R. Doc. 36 at 2-3.  For the purposes of
this Order, the Court assumes that both Ms. Fields and Mr. Spann
oppose the motions to dismiss.

# I.    BACKGROUND

On September 20, 2021, plaintiffs Kelton Spann and Evie Fields, proceeding *pro se*, filed a complaint against Chase and Angie Boudreaux, a Chase branch employee.   Plaintiffs allege that, on or about July 23, 2021, Legal Document Specialist, LLC ("the Company"), a company that plaintiff Kelton Spann allegedly owns,[4] drafted a "limited power of attorney" for Ms. Fields, naming her relative, Kelton Spann, as her agent.[5]   The complaint asserts that Ms. Fields asked her agent, Mr. Spann, "to obtain a $2,500.00 Cashier's check in Mrs. Evie Fields's name," and instructed him that $2,000 of those funds should be paid to the Company for previous "legal document services" that it had provided to Ms. Fields, and that Mr. Spann should "disperse [sic] the remaining funds to her in cash."[6]   Mr. Spann represents that, when he attempted to deposit the check into the Chase business account of the Company, on behalf of Ms. Fields, his "personal banker," Ms.

---

[4]     In their complaint, plaintiffs state that Kelton Spann is a "staff member" of the LLC's "office." R. Doc. 4-1 at 7.  But in their opposition, plaintiffs state that Kelton Spann is "the owner of the company."  R. Doc. 36 at 9.

[5]     R. Doc. 4-1 at 7.

[6]     *Id.*   In Chase's motion to dismiss, it clarifies that Mr. Spann was "attempting to deposit a third-party check made payable to and purportedly endorsed by Mrs. Fields into a Chase business banking account titled to Legal Document Specialist, LLC, based on . . . the Limited Power of Attorney." R. Doc. 15-2 at 3-4.

Boudreaux, informed him that Chase "does not accept limited power of attorneys."[7]  Plaintiffs allege that Chase then "placed a hold" on Ms. Fields's check, and "closed [the Company's] business account."[8]

Plaintiffs further represent that Ms. Boudreaux told Mr. Spann that he could verify Ms. Fields's endorsement of the check by having her go to a nearby branch of Chase in Covington, Louisiana.[9]  Plaintiffs allege that Ms. Fields is unable to travel to Covington because she "cannot travel or ride for long distances due to her disability," and that the closest Chase branch is thirty-five minutes from her home in Bogalusa, Louisiana.[10]  Mr. Spann represents that he explained to Ms. Boudreaux that Ms. Fields had a disability, and asked if Ms. Fields could endorse the check over a video call.[11] According to plaintiffs, Ms. Boudreaux advised Mr. Spann that, under Chase's standards and procedures, Ms. Fields was required to appear in person to endorse the check.[12]  Plaintiffs allege that Chase does not require "these actions on a power of attorney with Caucasian customers."[13]

---

[7]     R. Doc. 4-1 at 7.
[8]     *Id.*
[9]     *Id.*
[10]    *Id.*
[11]    *Id.*
[12]    *Id.*
[13]    *Id.*

Based on Chase's refusal to permit Mr. Spann to deposit the check allegedly endorsed by Ms. Fields, plaintiffs assert several causes of action against the defendants, including under section 1983, the Equal Protection Clause, Title VII, section 1981, the Americans with Disabilities Act, and claims related to Chase's "illegal hold" on plaintiffs' funds.[14]

On January 5, 2022, Chase moved to dismiss plaintiffs' claims under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.[15] On the same day, defendant Ms. Boudreaux moved to dismiss plaintiffs' claims under Rule 12(b)(5) for insufficient service of process, or in the alternative, under Rule 12(b)(6) by adopting Chase's motion to dismiss.[16] Plaintiffs oppose both motions.[17]  The Court considers the parties' arguments below.

## II.    RULE 12(b)(5) MOTION

Defendant Angie Boudreaux seeks the dismissal of plaintiffs' claims against her on the grounds that she was not properly served in her individual capacity.[18]  Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of

---

14    *Id.* at 7-8.
15    R. Doc. 15.
16    R. Doc. 16.
17    R. Docs. 26 & 36.
18    R. Doc. 16.

a plaintiff's claim if service of process is insufficient under Rule 4 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(5).  "In the absence of valid service of process, proceedings against a party are void."  *Aetna Bus. Credit, Inc. v. Universal Décor & Interior Design*, 635 F.2d 434, 435 (5th Cir. 1981).  In the face of a Rule 12(b)(5) challenge, the party responsible for service bears the burden of establishing that service was valid.  *Shabazz v. City of Houston*, 515 F. App'x 263, 264 (5th Cir. 2013) (per curiam) (citing *Sys. Signs Supplies v. U.S. Dep't of Just.*, 903 F.2d 1011, 1013 (5th Cir. 1990) (per curiam)).

Federal Rule of Civil Procedure 4(e) sets forth the procedural requirements to effectuate service on individual defendants.  Rule 4(e) provides that a federal litigant may serve an individual defendant by following the procedural methods of service provided by the state in which the district court is located or where service is made, Fed. R. Civ. P. 4(e)(1), or by doing any of the following: (1) "delivering a copy of the summons and of the complaint to the individual personally," (2) "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or (3) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process," Fed. R. Civ. P. 4(e)(2).

Here, the return of service indicates that Ms. Boudreaux was served by leaving a copy of the summons with her co-worker, Tiffany Daniels, at defendant's place of employment.[19]  Ms. Boudreaux represents that she has not appointed Tiffany Daniels as an agent for service of process.[20]  And plaintiffs have produced no evidence that defendant appointed Tiffany Daniels to accept service on her behalf.  *See Doe v. St. James Par. Sch. Bd.*, No. 15-5370, 2016 WL 1558794, at *4 (E.D. La. Apr. 18, 2016) (finding that service was invalid when plaintiffs left a summons and complaint with an employee at defendants' workplace absent a showing that defendants had authorized that employee to accept service on their behalf).  Thus, plaintiffs were required to serve defendant through personal or domiciliary service. Delivering a summons to a defendant's co-worker at the defendant's workplace constitutes neither personal service nor domiciliary service under Rule 4(e)(2).  *See Magee v. Reed*, No. 14-1554, 2016 WL 2348068, at *2 (E.D. La. May 4, 2016) (finding that service upon defendants in their individual capacity through personal or domiciliary service was not done when plaintiff "merely left" the summons and complaint with the receptionist at

---

[19]     *See* R. Doc. 11 (Return).  The summons was delivered to "3501 Gause Blvd. Slidell, LA 70458" which is the address of Chase Bank.  *Id.*; *see also* R. Doc. 16-2 at 2.

[20]     R. Doc. 16-2 at 5-6.

defendants' office).  Thus, plaintiffs' attempted service on Ms. Boudreaux, through Tiffany Daniels, was insufficient under Rule 4(e)(2).

Turning to state law under Rule 4(e)(1), Louisiana law[21] requires domiciliary or personal service if the document that is being served requires an appearance or an answer.  La. Code Civ. Proc. arts. 1231, 1313.  Further, Louisiana law does not authorize service on a non-agent at an individual's place of work.  *See Jefferson Cmty. Health Care Ctr., Inc. v. Roby*, 180 So. 3d 585, 587-88 (La. App. 5 Cir. 2015) ("Domicile is a person's principal domestic establishment, as contrasted to a business establishment.").  Accordingly, plaintiffs' attempted service of Ms. Boudreaux was insufficient under state law as well.

For these reasons, the Court finds that plaintiffs did not properly serve Ms. Boudreaux under either the Federal Rules or Louisiana law.  Plaintiffs' claims against Ms. Boudreaux are therefore subject to dismissal for insufficiency of service of process under Rule 12(b)(5).

Under Rule 4(m), a plaintiff must properly serve a defendant within 90 days of filing the complaint.  Fed. R. Civ. P. 4(m).  The Rule provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that

---

[21]  Plaintiffs attempted to serve Ms. Boudreaux in Louisiana.  *See* R. Doc. 10 (Summons).

> defendant or order that service be made within a specified time.
> But if the plaintiff shows good cause for the failure, the court
> must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  Because plaintiffs here failed to serve process on Ms.

Boudreaux within 90 days of filing their complaint,[22] the Court must

determine whether "good cause" exists to extend the time for service.

*Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996).  If "good cause" exists,

the Court "*must* extend time for service."  *Id.*  If, on the other hand, "good

cause" does not exist, it is within the Court's discretion to either dismiss the

case without prejudice or extend time for service.  *Id.*  The Court has "broad

discretion in determining whether to dismiss an action for ineffective service

of process."  *George v. U.S. Dep't of Labor*, 788 F.2d 1115, 1116 (5th Cir.

1986).  The plaintiff has the burden of proving good cause for the failure to

effect timely service.  *See Sys. Signs Supplies*, 903 F.2d at 1013.  To

demonstrate good cause, a plaintiff must "make a showing of good faith and

show some reasonable basis for noncompliance within the time specified."

*Id.* (quoting *Winters v. Teledyne*, 776 F.2d 1304, 1306 (5th Cir. 1985)).  Mere

inadvertence or ignorance of the rules cannot establish good cause.  *Peters*

*v. United States*, 9 F.3d 344, 345 (5th Cir. 1993); *see also Sys. Signs Supplies*,

---

22   R. Doc. 4 (indicating that plaintiffs' complaint was filed on September
     20, 2021).

903 F.2d at 1013 ("Pro se status does not excuse a litigant's complete failure to effect service.").

Plaintiffs assert that service to Tiffany Daniels, a person of suitable age who works at the same Chase branch where Ms. Boudreaux "dwell[s] almost everyday" is sufficient.[23]  Plaintiffs additionally assert that, in their view, Ms. Boudreaux's request for dismissal for improper service is "meritless and should be denied because it is a waste of judicial resources and time."[24] Plaintiffs have made no attempt to demonstrate good cause for their failure to serve defendant in accordance with Louisiana law or the Federal Rules of Civil Procedure.   Further, plaintiffs, after being notified of their noncompliance with the rules, have made no additional efforts to serve Ms. Boudreaux.  *Cf. Sys. Signs Supplies*, 903 F.2d at 1014 (suggesting that leniency may be appropriate when a *pro se* plaintiff made "repeated attempts to comply with the rules" and "attempted service on the federal defendants more than once").  The Court thus finds that neither plaintiffs' *pro se* status nor their beliefs regarding the "merit[s]" of the proper-service requirement, constitute good cause for an extension of time.

---

[23]     *Id.*
[24]     *Id.* at 4.

Even if good cause is lacking, a court may nevertheless extend the deadline for service of process by "direct[ing] that service be effected within a specified time." Fed. R. Civ. P. 4(m). Upon a finding that service is insufficient but curable, it is generally appropriate for a court to quash service rather than dismiss the complaint. *Amir El v. Louisiana State*, No. 16-2125, 2016 WL 6563403, at *2 (E.D. La. Nov. 4, 2016). But, when proper service would be "futile," dismissal is appropriate. *Id.* Here, the Court concludes that an extension of plaintiffs' deadline for service of process is not warranted. As detailed below, even if service were properly effected on Ms. Boudreaux, plaintiffs' claims would not survive a motion to dismiss for failure to state a claim under Rule 12(b)(6). Therefore, because plaintiffs failed to timely effect service of process, and because proper service would be futile, the Court grants Ms. Boudreaux's motion to dismiss under Rule 12(b)(5), and dismisses plaintiffs' claims against her.

## III. RULE 12(b)(6) MOTION

Chase seeks dismissal of plaintiffs' claims against it on the grounds that plaintiffs have failed to state a claim.[25] To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is

---

[25] R. Doc. 15.

10

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009).  But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

Because the plaintiffs are *pro se* litigants, the Court will apply "less stringent standards" to *pro se* litigants than to parties represented by counsel.  *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) (per curiam). This does not mean, however, that the Court "will invent, out of whole cloth, novel arguments on behalf of a *pro se* plaintiff in the absence of meaningful, albeit imperfect, briefing."  *Jones v. Alfred*, 353 F. App'x 949, 951-52 (5th Cir. 2009).  Accordingly, even a *pro se* complaint "must set forth facts giving rise to a claim on which relief may be granted."  *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993).

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments.  *Brand Coupon Network,*

*L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).  The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims.  *Id.*  "It is well-established that '[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'"  *Carter v. Target Corp.*, 541 F. App'x 413, 416-17 (5th Cir. 2013) (per curiam) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).  Here, Chase attaches to its motion to dismiss the limited power of attorney that names Evie Fields as the grantor and appoints Kelton Spann as her agent.[26]  Because the limited power of attorney is referred to in plaintiffs' complaint and is central to their claims, the Court may consider it in ruling on defendant's motion to dismiss. *Id.*

### A.    Section 1983 Claim

Plaintiffs' complaint first states that they are suing defendants under section 1983 for violating their rights under the Equal Protection Clause.[27] Section 1983 of Title 42 of the United States Code provides a cause of action

---

[26]    R. Doc. 15-3 at 1 (Limited Power of Attorney).

[27]    R. Doc. 4-1 at 3.

for plaintiffs whose federal rights are violated under the color of state law. 42 U.S.C. § 1983; *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).   To state a claim under section 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting "under color of state law."   *Id.* The "under color of state law" requirement means that the defendant in a section 1983 action must have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."   *West v. Atkins*, 487 U.S. 42, 49 (1988) (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)).   This excludes purely private conduct, no matter how wrongful.   *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

Chase seeks dismissal of plaintiffs' complaint because it does not allege that the defendants are state actors or that they were acting under the color of state law.[28]   Plaintiffs do not dispute that Chase is a private actor, but, for the first time in their opposition, assert that Chase "could be fairly described as a state actor" because Chase and the State of Louisiana "operate jointly in many ways."[29]   Specifically, plaintiffs assert that Chase has received

---

[28]   R. Doc. 15-2 at 7-8.
[29]   R. Doc. 36 at 6-7.

"significant aid from State officials," engages in "business deals" with the State, and speculates that Chase "could be involved [in] a lease with the State."[30]

Although private actors and private corporations can be liable under section 1983, liability attaches only if the plaintiff alleges that the private actor "was a willful participant in joint activity with the State or its agents," or by demonstrating that the private actor conspired or acted in concert with state actors. *Glotfelty v. Karas*, 512 F. App'x 409, 414 (5th Cir. 2013) (internal quotations and citations omitted). The Fifth Circuit has previously held that a section 1983 plaintiff must allege an agreement between the public and private defendants to commit an illegal act and deprive the plaintiff of constitutional rights. *Priester v. Lowndes Cnty.*, 354 F.3d 414, 420 (5th Cir. 2004). Moreover, the Fifth Circuit has also established that "general state involvement with [a] corporation or industry is not sufficient to support a [section 1983] claim," because the state's involvement "must be directly related to the action that gives rise to the § 1983 claim." *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1349 (5th Cir. 1985).

The Court finds that plaintiffs have failed to allege a plausible claim under section 1983. Plaintiffs do not allege that defendants conspired with

---

[30]     *Id.*

the state to commit an illegal act and deprive the plaintiffs of constitutional rights.  Nor does the complaint allege an agreement between the defendants and the state.  *See D'Aquin v. Landrieu*, No. 16-3862, 2016 WL 7178511, at *3 (E.D. La. Dec. 9, 2016) (dismissing plaintiff's claims against private actors and private corporations because plaintiff's "complaint d[id] not allege an agreement between the public and private defendants, nor d[id] it allege specific facts to show an agreement").   Further, plaintiffs' conclusory allegations—notably absent from the complaint itself—that Chase is a state actor because it "operates jointly" with the state by receiving state funds and aid, fails to plausibly allege that the state was "*responsible* for the specific conduct of which the plaintiff complains." *Daigle*, 774 F.2d at 1349 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (collecting cases in which courts found no state action when a private defendant was regulated by the state and received state funding)).  Therefore, plaintiffs' claims under section 1983 must be dismissed.  The Court dismisses plaintiffs' section 1983 claim with prejudice, and does not grant plaintiffs leave to amend their section 1983 allegations, because any amendment would be futile for the reasons given above.  *See Forman v. Davis*, 371 U.S. 178, 182 (1962).

**B.    Equal Protection Claim**

Plaintiffs next assert a claim against defendants under the Equal Protection Clause of the Fourteenth Amendment.[31]  The Fourteenth Amendment applies to acts of governmental entities, not to acts of private persons. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) ("The Equal Protection Clause reaches only state actors . . . .").  As noted above, plaintiffs have not plausibly alleged that the defendants are state actors. *See Mitchell v. Central Bank & Trust*, 49 F.3d 728, 728 (5th Cir. 1995) (noting that defendants Central Bank & Trust and an individual bank officer "are private actors and therefore the Equal Protection and Due Process clauses cannot provide a basis for jurisdiction").  Thus, like plaintiffs' section 1983 claim, plaintiffs' claim under the Equal Protection Clause is also dismissed with prejudice.

**C.    Title VII Claim**

Plaintiffs also assert a race-discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*[32]  Chase moves to dismiss plaintiffs' Title VII claim on the grounds that neither Ms. Fields nor Mr.

---

[31]    R. Doc. 4-1 at 8.

[32]    *Id.*

Spann allege that Chase was their employer, or that they ever applied for employment with Chase.[33]  Defendant additionally notes that plaintiffs have failed to exhaust their administrative remedies before filing suit.[34]

Title VII "prohibits *employment* discrimination on the basis of race, color, religion, sex, or national origin." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (emphasis added).  "[T]he purpose of Title VII is to protect employees from their employers' unlawful actions." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011).  Thus, the "zone of interests that Title VII protects is limited to those in employment relationships with the defendant." *Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 668 (5th Cir. 2020) (observing that it would be a "remarkable extension" of Title VII "to rule that a nonemployee has the right to sue").  Plaintiffs' complaint alleges no employment relationship, even a prospective one, with Chase.  Thus, plaintiffs have failed to state a Title VII claim upon which relief can be granted, and the Court dismisses plaintiffs' Title VII claim.  The Court dismisses plaintiffs' Title VII claim with prejudice, because plaintiffs' claim is implausible and thus any amendment would be futile.

---

[33]    R. Doc. 15-2 at 9.
[34]    *Id.*

### D.    Section 1981 Claim

Plaintiffs additionally bring a race-discrimination claim under section 1981.[35]  In their complaint, plaintiffs represent that "Mr. Spann could not find any procedures or standards that Chase bank required [in person endorsement] on a power of attorney with Caucasian customers."[36]  In their opposition, plaintiffs further represent that Chase and Ms. Boudreaux "intentionally refused to enforce the contract between Evie Fields and the Legal Document Specialist LLC," the latter of which is owned by Mr. Spann, who represents that he is a "minority."[37]

Section 1981 prohibits racial discrimination in making and enforcing contracts.  42 U.S.C. § 1981.  To establish a section 1981 claim for contractual discrimination, a plaintiffs must allege that: "(1) they are members of a racial minority; (2) Defendants intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute."  *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997)).  "[A] cause of action for racial discrimination in the making and enforcement of contracts, under § 1981, require[s] the plaintiff to

---

[35]    R. Doc. 4-1 at 7-8.

[36]    *Id.*

[37]    *Id.* at 7.

18

demonstrate intentional discrimination." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Discriminatory intent can be established via direct evidence or, "more commonly," by circumstantial evidence. *Bellows*, 118 F.3d at 274. "An allegation that similarly situated non-minorities received better treatment 'could create the necessary inference and set the predicate for establishing a section 1981 claim." *Body by Cook*, 869 F.3d at 386-87 (quoting *Crosby v. Kilgore*, 9 F.3d 104 (5th Cir. 1993)). But "naked allegation[s]" of discriminatory intent are insufficient to survive a motion to dismiss. *Id.* (quoting *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) (en banc)).

Here, plaintiffs' complaint adequately pleads the first element necessary to make out a section 1981 claim, by alleging that Mr. Spann is a member of a racial minority. But plaintiffs have not adequately alleged discriminatory intent, the second element of a section 1981 claim.[38] Specifically, plaintiffs' allegations of racially discriminatory intent are purely conclusory and subjective. Although plaintiffs allege that "similarly situated Caucasian customers" received better treatment than Mr. Spann, plaintiffs fail to identify a single similarly situated non-minority customer who was

---

[38]   Because plaintiffs have failed to adequately allege the second element of a section 1981 claim, the Court does not address whether they have adequately alleged the third element.

permitted to use a limited power of attorney to verify an endorsement on a check. Such a conclusory assertion, devoid of any facts about these allegedly "similarly situated" customers or what services they sought, is insufficient to plausibly allege a discrimination claim. *See Body by Cook*, 869 F.3d at 387 (holding that plaintiffs' "generalized allegations regarding Defendants' alleged disparate treatment of [plaintiffs] versus non-minority-owned shops" were "not specific enough to plead discriminatory intent"); *Pullins v. Hancock Whiteny Bank*, 512 F. Supp. 3d 647, 664 (M.D. La. 2021) (granting defendant's motion to dismiss plaintiff's section 1981 claim because plaintiff failed to allege "facts that non-minority bank customers seeking the same services under the same terms were not subjected to the same delays/holds"); *Brannon v. Delta Airlines, Inc.*, 434 F. Supp. 3d 124, 136 (S.D.N.Y. 2020) ("Plaintiff cannot maintain his discrimination claim based on an unsupported assertion regarding how similarly situated individuals were treated.").

Further, Mr. Spann's alleged inability to find Chase's asserted policies and procedures on limited power of attorneys, and his "conclusion" that this was because Chase had a different set of standards for non-minority customers, falls far short of plausibly alleging discriminatory intent. Mr. Spann's subjective belief of discriminatory intent, lacking any non-

conclusory factual allegations to support it, is insufficient to state a section 1981 claim.  *See Bolden v. Am. Airlines, Inc.*, No. 21-603, 2021 WL 3419682, at *4 (N.D. Tex. Aug. 5, 2021) ("While the Court does not doubt that [plaintiff] believes she was discriminated against, 'courts are not prepared to hold that a subjective belief of discrimination, however genuine, can be the basis of judicial relief.'" (quoting *Sherrod v. United Way Worldwide*, No. 17-758, 2018 WL 10435225, at *5 (N.D. Tex. Apr. 18, 2018))).  For these reasons, plaintiffs' section 1981 claim is dismissed without prejudice.  The Court grants plaintiffs leave to amend their complaint to plead facts sufficient to establish the second and third elements of a section 1981 claim.


### E.    Americans with Disabilities Act Claim

The complaint additionally asserts a claim under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq*.[39] Plaintiffs' complaint states that Ms. Fields suffers from "a disability where she cannot travel long distances or ride in a car for a long time."[40]  Plaintiffs assert that Ms. Boudreaux refused to accommodate Ms. Fields's disability and instead insisted that Ms. Fields travel from her home in Bogalusa,

---

[39]    *Id.* at 8.
[40]    *Id.*

Louisiana to the closest Chase branch in Covington, Louisiana, which is thirty-five minutes from Ms. Fields's home.[41]

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal employment of goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."   42 U.S.C. § 12182(a).  To state a claim under Title III, a plaintiff must allege that (1) she is disabled within the meaning of the ADA; (2) the defendant owns, leases, or operates a place of public accommodation; and (3) the defendant discriminated against the plaintiff by denying her a full and equal opportunity to enjoy the services that the defendant provides.  *Id.*; *see also Smith v. Ochsner Med. Ctr.-Westbank, L.L.C.*, No. 17-11898, 2019 WL 296860, at *5 (E.D. La. Jan. 23, 2019).  Chase contends that Ms. Fields fails to allege that: (1) she has a disability under the ADA; (2) she has standing to bring an ADA claim; (3) she requested a reasonable modification; (4) she was discriminated against because of her disability.[42]

As an initial matter, plaintiffs' requested relief—compensatory and punitive damages[43]—are unavailable under Title III.  *See Perez v. Doctors*

---

[41]   *Id.* at 7.
[42]   R. Doc. 15-2 at 10-17.
[43]   R. Doc. 4-1 at 5.

*Hosp. at Renaissance, Ltd.*, 624 F. Appx' 180, 183 (5th Cir. 2015) ("Damages are not available for a Title III ADA claim brought by a private party, but a private party may seek injunctive relief." (citing 42 U.S.C. § 12188(a)(1))). Because the only remedies sought by plaintiffs are unavailable under Title III of the ADA, plaintiffs' ADA claim must be dismissed for failure to state a claim upon which relief can be granted. *See Eaton v. Woodlawn Manor*, No. 21-1337, 2021 WL 4901811, at *4 (W.D. La. Oct. 5, 2021), *report and recommendation adopted*, 2021 WL 4900996 (W.D. La. Oct. 20, 2021) (dismissing plaintiff's ADA claims for damages); *Stuart v. Forest Animal Hosp.*, No. 12-37, 2012 WL 12915408, at *1 (S.D. Miss. Sept. 4, 2012) (granting defendant's motion to dismiss because Title III of the ADA "limits the remedy of a private claim to injunctive relief[,] and plaintiff's only claim is for compensatory damages").

Moreover, even if plaintiffs had requested injunctive relief, Chase contends that Ms. Fields lacks standing to pursue her ADA claim because she has not shown any intention to travel to the bank in the future.[44]  The requirement that a party have standing to bring suit flows from Article III of the Constitution, which limits the scope of the federal judicial power to the adjudication of "cases" or "controversies."  U.S. Const. art. III, § 2.  Standing

---

[44]    R. Doc. 15-2 at 12.

consists of three elements: (1) the plaintiff must have suffered an "injury-in-fact," which is an "actual or imminent" invasion of a legally protected interest that is "concrete and particularized;" (2) the injury must be "fairly traceable" to the challenged conduct of the defendant; and (3) it must be likely that plaintiff's injury will be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

In order to establish standing for injunctive relief, "a plaintiff must face a threat of present or future harm." *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997). Allegations of past wrongs, by themselves, do not "amount to that real and immediate threat of injury necessary to make out a case or controversy." *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1998). Instead, a plaintiff seeking injunctive relief for alleged past wrongs "must show that there is a real or immediate threat that he will be wronged again." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)); *see also Frame v. City of Arlington*, 657 F.3d 215, 235-36 (5th Cir. 2011) (en banc) ("Article III standing requires a plaintiff seeking injunctive relief to allege 'actual or imminent' and not merely 'conjectural or hypothetical' injury.").

The Fifth Circuit has further held that "a disabled individual need not engage in futile gestures before seeking an injunction; the individual must

24

show only that [the alleged barrier] actually affects his activities in some concrete way." *Frame*, 657 F.3d at 236 (finding that plaintiffs had "alleged in detail how specific inaccessible sidewalks negatively affect their day-to-day lives by forcing them to take longer and more dangerous routes to their destinations," and that these allegations were sufficient to support standing).[45]  Other sections of this Court have further found that "plaintiffs may demonstrate an injury in fact if they are unable to visit a particular place or participate in a particular activity in the future, and they have done so in the past . . . and intend[] to visit in the near future." *Tatum v. Bd. of Supe'rs for Univ. of La. Sys.*, 9 F. Supp. 3d 652, 656 (E.D. La. 2014) (Africk, J.) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000)); *see also Smith*, 2019 WL 296860, at *4 (Barbier, J.).

Here, Ms. Fields fails to allege facts sufficient to show an injury-in-fact-namely that there is a "real and immediate threat" of repeated injury. *Plumley*, 122 F.3d at 312.  Specifically, Ms. Fields has not alleged that Chase's refusal to accept a limited power of attorney would "negatively affect [her] day-to-day life." *Frame*, 657 F.3d at 236.  For example, Ms. Fields does not

---

[45]  Although the Fifth Circuit in *Frame* was addressing standing under Title II of the ADA, Title II's "standing analysis derives from Title III cases." *Cohan v. TMBC, LLC*, No. 18-1072, 2019 WL 2169185, at *2 n.3 (M.D. La. May 17, 2019).

allege that she has ever visited this bank in the past, nor that she has any intention of doing so in the future.  Although Ms. Fields is not required to state a specific time or reason for visiting the bank in the future, her risk of a future injury is too speculative unless she is "'able and ready' to visit the facility once it is made compliant."  *See Betancourt v. Federated Dep't Stores*, 732 F. Supp. 2d 693, 709 (W.D. Tex. 2010) ("Thus, any disabled plaintiff who alleges an intent to return can demonstrate a non-speculative injury sufficient for injunctive relief under the ADA.").  Plaintiffs' complaint fails to plausibly allege that she has any intention of visiting a Chase bank in the future or that there is any reason to believe that she would directly benefit from an injunction.  To the contrary, as detailed in the complaint, Ms. Fields is not a customer at Chase, has an account at a different bank, and does not live near a Chase bank.[46]  *Compare Cohan*, 2019 WL 2169185, at *2 (holding that an ADA plaintiff lacked standing to sue a store because "he lives 800 miles away, has visited the store once, and has identified no non-litigious reason to revisit it"); *Kennedy v. Solano*, 735 F. App'x 653, 655-56 (11th Cir. 2018) (per curiam) (holding that plaintiff lacked standing to sue a restaurant for injunctive relief because she did not live in "close proximity" to the restaurant, and had patronized the restaurant only once before bringing

---

[46]     R. Doc. 4-1 at 7.

suit), *with Tatum*, 9 F. Supp. 3d at 657 & n.16 (holding that plaintiff had adequately alleged an injury in fact because the plaintiff had "visited the Arena before and intends to visit in the near future," and because "plaintiff and the Arena are located in the same parish"), *Smith*, 2019 WL 296860, at *5 (holding that plaintiff had standing to seek injunctive relief because "she has expressed an affirmative intention to visit the hospital again in the future given that her child was born there and she lives in close proximity").

Thus, plaintiffs' ADA claim is dismissed on the grounds that it seeks relief that is unavailable under the statute. Further, even if Ms. Fields sought relief that was statutorily available, she would be unable to establish standing. Accordingly, because an amendment for injunctive relief would be futile, Ms. Fields's ADA claim is dismissed with prejudice, and without leave to amend.

### F.    State-Law Claims

The Court is not able to discern from plaintiffs' filings the basis for any state-law claims. Although the complaint alleges that "Chase Bank placed a hold on Mrs. Evie Fields and the Legal Document Specialist L.L.C. funds and then closed the business account," and that these actions were "illegal," it

provides no other reference to or information about a state cause of action.[47] In their opposition, plaintiffs assert that the Legal Document Specialist LLC "should be a party to the lawsuit" because of its interest in plaintiffs' alleged state-law claims.[48]  Plaintiffs further allege that defendants placed an "illegal" hold on the Company's funds, and that its deposit account agreement with Chase is unconstitutional.[49]

Given the lack of any plausible allegations of a state-law cause of action, any purported state-law claims cannot survive a motion to dismiss.  Further, to the extent that plaintiffs are seeking relief on behalf of a non-party, the Company, they lack standing to do so.  Plaintiffs have not amended their complaint to add the Company as a party, nor have they obtained the Court's leave to amend their complaint.  They instead seek to add a party in their opposition to Chase's motion to dismiss.  But it "is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *Pullins*, 512 F. Supp. 3d at 654 & n.24 (collecting cases).

Under Rule 15(a)(1), a plaintiff may amend the complaint once, as a matter of course, "within 21 days of serving it," or within 21 days of a responsive pleading or motion under Rule 12(b), (e), or (f).  After that period,

---

[47]    *Id.* at 7.
[48]    R. Doc. 36 at 10-11.
[49]    *Id.* at 11.

as is the case here, a party may "amend its pleadings only with the opposing party's consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although leave to amend "shall be freely given when justice of requires," it "is by no means automatic," and the decision "lies within the sound discretion of the district court." *Parish v. Frazier*, 195 F.3d 761, 762 (5th Cir. 1999). Because plaintiffs have not sought leave to amend their complaint to add a party, their attempted claims on behalf of the Legal Document Specialist, LLC, which remains a non-party to this litigation, must be dismissed. The Court grants plaintiffs leave to amend to state a plausible basis for any purported state-law claims and to add the Legal Document Specialist, LLC as a plaintiff.


## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Ms. Boudreaux's motion to dismiss for insufficient service of process.[50] Plaintiffs' claims against Ms. Boudreaux are DISMISSED WITHOUT PREJUDICE.

The Court also GRANTS Chase's motion to dismiss for failure to state a claim.[51] The Court DISMISSES WITHOUT PREJUDICE plaintiffs' section 1981 claim and state-law claims. Plaintiffs must file any amended complaint

---

[50]   R. Doc. 16.

[51]   R. Doc. 15.

within twenty-one days of this Order.  Plaintiffs' claims under section 1983, the Equal Protection Clause, Title VII, and the Americans with Disabilities Act are DISMISSED WITH PREJUDICE.


New Orleans, Louisiana, this __16th__ day of June, 2022.

_____
          SARAH S. VANCE
UNITED STATES DISTRICT JUDGE